I'm here oh there you are now we can see you great counsel good morning could you please just give me a thumbs up to let me know that you can hear Judge Bea as well as us here in the courtroom okay great excellent okay good morning welcome to the Ninth Circuit my name is Morgan Kristen I'm one of the judges on the circuit court my chambers are in Anchorage Alaska I've been sitting this week with Judge Bybee whose chambers are in Nevada I almost said Phoenix Las Vegas I beg your pardon and we're joined also by our colleague from San Francisco Judge Bea I'm gonna do just a little bit of housekeeping before we begin because we have a submitted case that I need to note two of them for the record several actually four United States v. McKay 20-30239 is submitted on the briefs the same is true of United States v. West 20-35786 and Adams v. Dodge 21-35490 all right with that if you are ready we are ready to hear your argument in the first case on the 20-30226 good morning may it please the court my name is Dan Polson I'm the assistant federal defender representing Jason black this is a sentencing appeal that raises the question of whether the district court violated mr. blacks equal protection and due process rights when it applied a two-point enhancement for a vulnerable victim the judge did so based on the fact that the offense was a robust law enforcement presence our position is is that if the district court's order is allowed to stand it relies on an overly broad formulation of the vulnerable victim enhancement and is going to invite racially disparate impacts for Alaska native persons who comprise the majority of persons in rural Alaskan communities this is an overly broad overly inclusive classification scheme it's contradicted by this circuits authority and it singles out a defendant for greater punishment for reasons that are not rationally related to any legitimate government interests and so what's strongest argument if I might interrupt you please what's your strongest argument that it's contradicted by this circuits authority okay so in United States versus Luca this court held that in order to find that a victim is vulnerable the district court needs to make findings that the victim is particularly susceptible to the criminal conduct and the essential inquiry is whether the victim was less able to defend themselves compared to a typical victim and in United States versus Rising Sun this court caution that if a district court is going to be relying on the remote or unpopulated characteristic of the location where the offense is committed if that was all it took to apply the vulnerable victim enhancement then we would be applying would be broadening the enhancement to the point where it might be applied in any case where an offense just happens to be committed in one of these sparsely populated areas to my knowledge this court has not applied this enhancement in cases where the defendant did not lure or entice the victim to accompany them to that remote location the the rural location of the incident was not the only thing the district court cited he cited for example that he took away her shoes so that she would not be able to to run away easily from him in this in this area that's that's a that's a fact that the district court cited that could have been it could be applicable to almost any place right why is this why why do we have to why do we have to limit ourselves to the question of it being unpopulated that was one thing that the district court cited but it whether the victim is particularly susceptible to the criminal conduct are they less capable of defending themselves compared to a typical victim and what's the criminal conduct in this case it's an aggravated assault involving a firearm it kind of goes without saying and if you look at the guidelines an aggravated assault is going to contemplate situations where a victim is restrained through means other than physical force so the fact that the victims you know shoes were burned or whatever is really doesn't take this outside the heartland of an aggravated assault involving a firearm and if you look over the court's decision fully three-quarters of the court's order is concerned with things like demographic data the rates of violent crime and rural communities the absence of law enforcement we've read the order and we appreciate that I think your points well taken and I don't think we have from my scorecard I don't think we've ever applied it this way before so I'm gonna give you all of that but just so you have a chance to focus in on judge by these question don't we look at all of it and including the taking the shoes away and the fact that this was really a siege you know a domestic violence incident that went on for a number of hours I'm I'm I'm focused on whether or not I think you know classic vulnerable victim is hypothetical we might think of would be someone who is physically disabled for example and vulnerability victim for that reason this is a little different for several reasons and one is that the taking of the shoes away which I find very compelling is something that happened you know during the crime it's not that it's not the way that this is situation the victim was in before the defendant came upon her have we ever applied the vulnerable victim enhancement where something that the defendant did you know during the course of the criminal activity rendered the well I think we're again looking at United States versus Luca is there something that made the victim unusually susceptible to the criminal conduct compared to a typical victim of this type of offense and another thing right so hold on I think that's right if you could just take it so this victim had her shoes taken away and burned and that happened really several hours before this incident ended so so for those several hours once the shoes were burned and there's a several hour period of time I think where why isn't she a vulnerable victim then okay so I what I was about to say is that in contrast with I think every case in this circuit involving a vulnerable victim the victim fights back in this case the victim was most definitely not incapacitated was not able to forcefully resist the defendants conduct the victim at one point grabs the firearm unloads the shells throws the shells out the window she escapes when she gets a chance hold it I get that but again we know the fact so where have we ever said that you can't be a vulnerable victim if you fight back well let's look at all the cases that were cited by the government in their answering brief whether we're talking about and I'm gonna get the pronunciation wrong but in why stole I think is how you pronounce it and that's the case that's the car salesman case that's where the victim is surprised by the defendants he's drawn out to this rural location because he's a car salesman they take him by surprise they shoot him in the head you see and then there's another case and I'm blanking on the name involving a sleeping victim sorry wedgie which is a case where the defendant specifically targets a sleeping child during a bed check and in all those cases the victim is taken by surprise there's usually some sort of lying in wait component in this case and again I am NOT going to dispute that mr. blacks conic is serious the question is do we apply a vulnerable victim enhancement above and beyond the aggravated guideline the aggravated assault guideline and I think what's really disturbing about this is that the district court signal that this is going to be applied going forward and again the majority of the order is concerned with things that have nothing to do with mr. black you're concerned though sir it really comes back to your thesis which is that if it were just a rural location you think that wouldn't be enough and I think your point is a very interesting one but as judge by the I'm trying to get you back to judge by these point which is I don't think we look at just that and there's these other circumstances which included burning the shoes and again if that was what was doing all the work that would be one thing but what's doing all the heavy lifting in the court's order it's the fact that this offense was committed in an underserved community that lacks a robust law enforcement presence this is not how our system of justice is supposed to work we don't apply a two-tiered system if mr. black was living in a gated community that had armed security officers you can understand you know he presumably wouldn't be subject to this enhancement again we're not here to say that mr. black's conduct isn't serious but if you're going to be applying the vulnerable victim enhancement based in large part on the characteristics of this community we are inviting a racially disparate sentencing regime and it looks like I only have two minutes and 20 some seconds left so I'm going to stand down and reserve ask you a question that occurred to me what is the noble or is it the abuse of discretion so we're arguing because this is a constitutional question this board is applying to Nova review but certainly if the district court abuses discretion in applying the enhancement and I think that's that's clear based on this court's authority that goes to whether or not there's a rational basis I think for applying the enhancement in this case not at this point okay well we'll hear from the government please good morning Sharice Arce on behalf of the United States the court identified a couple factors that make this case unique I also want to highlight a few others the district court permissibly considered and identified not only the remoteness of the community and the lack of access to meaning meaningful law enforcement but the also they were personal character characteristics of the victim that could create additional vulnerability and it didn't stop at those two instances as alleged by by mr. black mr. black exasperated her vulnerability by confining her to a residence for seven hours as identified by your honor while threatening her multiple times that he was going to kill her with a gun second as identified by the court he did burn her shoes in the wood stove to hamper her escape second not only that she did cut off her means of assistance in two different ways he threatened to kill her family on prior occasions additionally he threatened to shoot any law enforcement officer that attempted to arrest him this threat to law enforcement was made about a month as identified by your honor Christiansen black created these circumstances he himself knew that he that that the victim would not be able to have assistance meaningful assistance because he cut off those ties so I think in this instance the case law as cited by by mr. black although we haven't found an I think the case is well in support that the judge can consider a wide range of victim circumstances and location the demography those were among among the circumstances considered by the court and counsel counsel could I just get in a word if I you mentioned these other circumstances and I just was you can you I have signal that I'm concerned about the vulnerability arising during the course of the crime itself because then it becomes a temporal problem if I shoot you once you're you're a victim are you then are you vulnerable for the for the second shot you know that kind of thing so you mentioned that the as we all have that the shoes were burned how far into the sequence where the shoes burned it's not clear in the record how far in the sequence that occurred okay I think I had some indication but I okay then you said that the defendant also threatened law enforcement when did that happen and I just want to make sure law enforcement understood that that threat had been made it wasn't that he just uttered that to his victim and and when did he threaten law enforcement the threat to law enforcement occurred about a month prior and that threat was made directly to the village police officer there was one village police officer located in the community is that village public safety offer of officer is that correct and is that that was a 21 year old person 21 year old unarmed yeah okay got it and that's also the there was threats to kill her family on prior occasions and it's not on it's not known in the record when exactly those threats were made to her family and I would like to point out mr. black did cite to Luca however in that instance the district court what was found was that the district court didn't point to any facts that made the victim less able to defend themselves than a typical victim and so in this instance the court did that also I want to turn to rising Sun if I may in that instance that was where the remote location that in the Ninth Circuit determined that remote location may be appropriate because the remoteness exasperated the victims isolation so for these reasons the government believes that the court did not violate mr. blacks equal protection rights he hasn't even met the threshold requirement as required in Pimentel v. Dreyfus and he hasn't shown that the district court treated him differently from other defendants convicted of being a prohibited person in possession of a firearm there's no evidence that race was a motivating factor in the sentence he presented no evidence that the sentence would result in a disparate impact further there's no direct or circumstantial evidence demonstrating discriminatory purpose and as I would identify in Washington v. Davis the Supreme Court has instructed that impact alone is not sufficient to support a fighting of invidious discrimination of a racially neutral law so unless there are further questions we urge the court to affirm I have one question I thought I had recalled seeing a case where this enhancement had been applied on a fishing vessel and I can't have that citation but I that does sound vaguely familiar maybe something whether from my state court days but I couldn't find it either so I thank you for your argument let me just check do either of my colleagues have questions it looks like not thank you thank you council your rebuttal time you have a couple of minutes left just a couple of things so again we have to look at what the criminal conduct is and what we minimizing mr. blacks the seriousness of the offense but it's contemplated that any domestic violence aggravated assault involving a firearm that the victim is going to be you know incapacitated in some way it's not uncommon for a domestic violence offense to take place in the home for example where there just aren't other people's present it's it goes without saying that the victim is going to be threatened with the firearm the victims probably going to have limited opportunities to escape I mean that's just encompassed in the definition of an aggravated assault looking at the specific conduct the specific characteristics of the victim she's able to resist she's able to fight back and she's able to get to safety I want to also contest something so I get your response I mean the judge's point was she she was on her own there are other domestic violence victims who are able to get to 9-1-1 to get additional help what what about that okay so if you're in a community that doesn't have a strong law enforcement presence that that's that's a tragedy that's that's sad and obviously there's a complex array of social and economic factors that explain why Norvig doesn't have a lot of police officers but that's not because of mr. black mr. black just happens to be a native Alaskan who's living in one of these underserved communities again there's no nexus between the regional characteristics and mr. black specific conduct and again the data and the lack of law enforcement in these communities that's not inherent in the offense and I'll leave it at that unless there's additional questions are there questions no and actually and actually sorry one other point before I break off the government said that there's that we haven't established that this will result in disparate impacts to my knowledge the government has not contested the argument that we raised that by and large the Alaska the rule Alaskan communities that we were talking about are synonymous with native Alaskan communities and that the government's own briefing use those terms interchangeably so I don't think there's really any dispute that when we talk about rural Alaskan communities we're talking about native Alaskans and with that I'll stand down thank you for your argument thank you both for your arguments they're very helpful we'll take this case under advisement and move on to the next case on the calendar
judges: BYBEE, BEA, CHRISTEN